# CRIMINAL CASES.

## Richmond

EARL MARTIN v. COMMONWEALTH AND NETTIE
MARTIN v. COMMONWEALTH.

September 17, 1925.

1. HOMICIDE—*Degree of Crime—Presumptions.*—The crime of murder is so serious that where the homicide is admitted, or clearly shown, there is a presumption that it is murder in the second degree in this State, and the courts should not disturb verdicts which acquit the accused of first degree murder, unless this presumption is rebutted, or some substantial right has been denied.

2. CRIMINAL LAW—*Evidence of other Crimes—Occurrences Immediately Preceding the Alleged Crime.*—While it is improper to admit evidence of other crimes having no connection with the crime for which the accused is then being tried, this rule does not forbid the admission of evidence of occurrences immediately preceding the homicide, showing proximity, opportunity and motive, and directly connected in time and circumstance with the crime.

3. CRIMINAL LAW—*Evidence of other Crimes—Occurrences Immediately Preceding the Alleged Crime—Case at Bar.*—In the instant case, a prosecution for murder, the lower court did not err in admitting evidence showing that deceased, accused and others were engaged in drinking and playing "crap" immediately before the homicide; that a difficulty then arose between the parties, and there was a fight; that the liquor drunk on that occasion was purchased from the accused, and, that the homicide took place immediately after deceased had left the house and returned on a peaceful and lawful errand. It would have been impossible to present the story of the homicide to the jury so that they could intelligently decide the issues of fact presented without this introduction, which explained the presence of the parties, showed their conduct, and was part of the continuous

transaction which led up to and resulted in its unfortunate culmination.

4. HOMICIDE—*Witnesses—Cross-Examination—Accused Asked Whether His Wife Had Sold Whiskey.*—In the instant case, a prosecution for murder against a husband and his wife, it was assigned as error that the prosecuting attorney was permitted to ask the husband on cross-examination whether his wife had sold liquor on previous occasions. The evidence was admitted only upon the ground that it was intended to test the credibility of the witness who had contradicted the testimony produced by the Commonwealth that the wife had sold whiskey on the evening of the homicide. The court had previously expressly refused to allow the introduction of evidence of any former sales and had strictly limited the testimony to the occurrences immediately preceding the homicide.

*Held:* That while attorneys for the Commonwealth should refrain from asking such irrelevant questions, still under the peculiar facts of the case it did not constitute reversible error. The accused promptly denied the imputation and the prosecution was bound by his answer; so that there was no evidence of the irrelevent fact that the question suggested.

5. CROSS EXAMINATION—*Limits—Discretion of Trial Court.*—The liberty of the cross-examiner is not entirely unrestricted, and as to the propriety of seemingly irrelevant questions, much must be left to the discretion of the trial judge.

6. CRIMINAL LAW—*Presumptions and Burden of Proof—Burden on Commonwealth to Prove Accused Guilty Beyond a Reasonable Doubt.*—No presumption relieves the prosecution of the ultimate burden of showing, upon the whole evidence, the guilt of the accused beyond a reasonable doubt.

7. HOMICIDE—*Instructions—Deadly Weapon—Malice.*—Upon a trial for homicide the court instructed the jury that when a killing is done with a deadly weapon the law presumes that it was done with malice, and it is for the accused to satisfy the minds of the jury that such killing was not done with malice. While the use of the words "satisfy the minds of the jury," or "prove to the satisfaction of the jury," in this connection, was not to be commended, yet it was not reversible error, in view of other instructions which told the jury that if all the evidence left a reasonable doubt as to the guilt of the accused, they must find him not guilty.

8. HOMICIDE—*Instructions—Burden of Proof.*—Where the jury is instructed that in order to elevate the offense to murder in the first degree the burden is upon the Commonwealth, while to reduce the offense from murder in the second degree to manslaughter the burden is upon the prisoner, it is better in immediate connection therewith to add that nevertheless when the evidence is all in, then if the evidence both for the Commonwealth and the accused leaves a reasonable doubt

as to the guilt of the accused, the jury must find the prisoner not guilty.

9. HOMICIDE—*Evidence Sufficient to Sustain Conviction of Murder in the Second Degree.*—In the instant case, a prosecution for homicide, it appeared from the uncontradicted testimony that accused had just quarreled with a third party and deceased intervened; that deceased and his companions had just left the house after a threat to call the police; that immediately thereafter, on the return of deceased on a peaceful errand, a fierce fight, in which several were engaged, occurred as soon as he entered the hallway; that deceased was unarmed and was killed by a pistol shot; that accused first denied all knowledge of the shooting, but afterwards revealed where she had hidden the pistol.

*Held:* That this evidence was sufficient to support a verdict of guilty of murder in the second degree.

10. HUSBAND AND WIFE—*Criminal Law—Presumption that Wife Acted under Coercion of her Husband.*—Where a husband and wife were charged with murder, the court refused to instruct the jury that there was a presumption of law that the wife acted under the coercion of her husband.

*Held:* No error, as this presumption never applied to the crime of murder.

Error to a judgment of the Corporation Court of the city of Roanoke.

*Affirmed.*

The opinion states the case.

*A. B. Hunt* and *T. W. Messick,* for the plaintiffs in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Lewis H. Machen, Assistant Attorney-Generals,* for the Commonwealth.

PRENTIS, P., delivered the opinion of the court.

The accused, who are husband and wife, were (together with A. E. Martin) jointly charged with the murder of Richard O. Amos and jointly indicted.

They were separately tried by different juries and each has been found guilty of murder in the second degree and sentenced to five years imprisonment in the penitentiary. The Commonwealth relies upon substantially the same evidence in both cases and they were argued here together.

[1] Earl Martin, though he at first denied all knowledge of the homicide, soon admitted that he shot the deceased in the hallway of his home, but claimed that he did it in defense of his wife and himself, and the evidence for the Commonwealth is sufficient to show that Nettie Martin was present participating in the affray, aiding and abetting her husband, and that she hid the pistol which was used immediately after the homicide. So that unless the accused are entitled to acquittal on the ground of self-defense, or there was some harmful error committed during their trials, the judgments must be affirmed. The crime of murder is so serious that where the homicide is admitted, or clearly shown, there is a presumption that it is murder in the second degree in this State, and the courts should not disturb verdicts like these which acquit the accused of first degree murder, unless this presumption is rebutted, or some substantial right has been denied.

Referring first to the Earl Martin record—

1. As to his first assignment of error, it is only necessary to say that the demurrer to the indictment was properly overruled, because the indictment clearly and in the usual form charged him with murder as a principal.

[2, 3] 2. His second assignment is based upon the well established rule that it is improper to admit evidence of other crimes having no connection with the crime for which the accused is then being tried. The

rule is sound and just, but it is inapplicable and has not been violated. What the court did was to admit evidence of the occurrences which immediately preceded the homicide, showed proximity, opportunity and motive, and which were directly connected in time and circumstance with the crime. These connected circumstances which were relied on by the prosecution may be thus summarized:   Three men—Hawkins, who was acquainted with the accused, and two other men, the deceased and Bullock—went to the home of the accused in Roanoke at about 8:30 or 9 o'clock p. m. Nettie Martin there, in the presence of Earl Martin, her husband, sold Hawkins a pint of whiskey, Martin brought ice, water and sugar, and all five drank of the whiskey. Earl Martin then went to the theatre.   During his absence the three men played "crap" (threw dice for dimes and nickles), bought from Nettie Martin another pint of whiskey, all four drank of it, and Mrs. Martin at one time joined in the game.   Hawkins and Mrs. Martin disagreed as to the amount of money claimed to be due by him to her, and quarreled. She claimed as they were about to leave that he owed her $3, which he denied. She, using coarse, profane and insulting words, called him a dirty liar.   He started to slap or strike her, but the deceased, Amos, intervened and intercepted the blow. At this juncture the accused, Earl Martin, returned, and his wife told them to "get the hell out of the house," and an effort was made to call the police. Hawkins, Amos, the deceased, and Bullock left precipitately, one through a window. Hawkins left his coat and overcoat behind.   All three went immediately across the street where Hawkins' automobile was parked. Realizing then that he had left his overcoat with the key to his machine behind him, he started to return, but

Amos, the deceased, volunteered to go for it instead, explaining that as Mrs. Martin was mad with Hawkins there might be further trouble if he (Hawkins) should return to the house. Amos forthwith entered the front door, a fight ensued in the hallway immediately and he very soon fell or was thrown through the broken glass of the front door mortally wounded by a pistol shot in the breast, of which he died in a few seconds.

Most of this evidence is denied by the Martins, but they too gave the jury their version of this visit of the three men, and of all the occurrences of the evening. It would have been impossible to present the story of the homicide to the jury so that they could intelligently decide the issues of fact presented without this introduction, which explained the presence of the parties, showed their conduct, and was part of the continuous transaction which led up to and resulted in its unfortunate culmination. Indeed, each of the accused and their co-defendant testified fully as to all of the events of the evening and added many picturesque details thereto. This evidence was necessary and is therefore certainly proper. Beale's Crim. Pl. & Pr., sec. 280.

[4, 5] 3. The third assignment of error grows out of the fact that the prosecuting attorney was permitted to ask Earl Martin, while on cross-examination, whether his wife had sold whiskey on previous occasions to Hawkins and to another. It was admitted only upon the ground that it was intended to test the credibility of the witness who had contradicted the testimony produced by the Commonwealth that she had sold whiskey on the evening of the homicide. The court had previously expressly refused to allow the Commonwealth to introduce evidence of any former sales and had strictly limited the testimony to the occurrences

of that evening immediately preceding the homicide. Attorneys for the Commonwealth should refrain from asking such irrelevant questions which are designed to prejudice the accused before the jury, because they should always remember whose commission they bear and should scrupulously respect the rights of the accused; still under the peculiar facts of this case we will not hold that it constitutes reversible error. The accused promptly denied the imputation and the prosecution was bound by his answer; so there was no evidence of the irrelevant fact which the question suggested. The liberty of the cross-examiner is not entirely unrestricted, but as to such questions much must be left to the discretion of the trial judge.

4. The fourth assignment relates to the six instructions which present the theory of the prosecution. They were complained of as containing only abstract propositions of law which were inapplicable to the evidence. This criticism is quite unjustified. They follow a long line of Virginia cases and referred to the presumptions which arise from the killing with a deadly weapon in the previous possession of the slayer. These questions have been so frequently considered and the cases so often reviewed that extended discussion is unnecessary. *Hill's Case*, 2 Gratt. (43 Va.) 595; *Litton's Case*, 101 Va. 833, 44 S. E. 923; *Bryan v. Commonwealth*, 131 Va. 714, 109 S. E. 477; *Sims v. Commonwealth*, 134 Va. 752, 115 S. E. 382; *Mealy v. Commonwealth*, 135 Va. 585, 115 S. E. 528.

[6] No presumption, however, relieves the prosecution of the ultimate burden of showing, upon the whole evidence, the guilt of the accused beyond a reasonable doubt.

The instructions given for the Commonwealth recognized this rule, and in addition the court gave every instruction offered for the accused, eight in number,

which fully presented this and every other possible theory of the defense, and were quite as favorable to him as is justified by the evidence.

Although we have so frequently expressed our views, lest we be misunderstood, we make these further observations as to instruction 3, given upon motion of the Commonwealth:

It reads: "That to constitute murder in the second degree the killing must have been done with malice, but not with premeditation, and it is not necessary that such malice should exist for any particular length of time prior to the killing. It is only necessary that it should be present for the first time at the time of the killing, or at any time previous thereto, and when the killing is done with a deadly weapon, the law presumes that it was done with malice, and it is for the accused to satisfy the minds of the jury that such killing was not done with malice."

[7] While the precise language used in the last clause of this instruction—that is, "it is for the accused to satisfy the minds of the jury that such killing was not done with malice"—has been expressly approved in *Potts* v. *Commonwealth*, 113 Va. 732, 73 S. E. 470, the appropriate and preferable language is that which was actually used in instruction 5 in this case, covering substantially the same point. Such an instruction relates to the presumption which arises from a homicide with a deadly weapon, and to the shifting phases of the evidence. The use of the words, "satisfy the minds of the jury," or "prove to the satisfaction of the jury," comes very near to committing the error which was condemned in the *Potts Case, supra*, and in *Covington* v. *Commonwealth*, 136 Va. 672, 116 S. E. 462.

[8] The preferable language is, that in order to elevate the offense to murder in the first degree the burden is upon the Commonwealth, while to reduce the

offense from murder in the second degree to manslaughter the burden is upon the prisoner, but it is better in immediate connection therewith to add qualifying language equivalent to that used in *Litton's Case, supra,* that nevertheless "when the evidence is all in, then if the evidence both for the Commonwealth and the accused leave a reasonable doubt as to the guilt of the accused, the jury must find the prisoner not guilty."

This qualification was not only expressed in instruction 6 given for the Commonwealth, but was emphatically repeated in this instruction which was given for the accused:

"The court instructs the jury that the indictment in this case does not raise the slightest presumption of guilt against the accused, but on the contrary he is presumed to be innocent of wrongful acts, and that presumption continues and remains with the accused throughout the trial and every stage thereof, and until the Commonwealth has established by clear, distinct and reliable evidence, and to the exclusion of all reasonable doubt, every element essential to the crime charged against the accused; and failing in such proof, or if upon the completion of the testimony a reasonable doubt as to the necessity of the killing exists, it would be your duty to acquit."

There is no reason to doubt that the jury comprehended the issue of fact which the conflict in the evidence raised, nor is there any fair doubt of the correctness of their conclusion.

[9] Referring to the *Nettie Martin Case,* little need be added. A different jury has found her guilty upon evidence substantially similar, but she stood mute and offered no contradictory testimony. It is sufficient to support the verdict, for it appears that she had just quarreled with Hawkins; that Amos intervened and

prevented Hawkins from striking her; that the three men had just left the house after the threat to call in the police; that immediately thereafter, when Amos returned on his peaceful errand, a fierce fight, in which several were engaged, occurred in the hallway, as soon as he entered, and this unarmed man was killed by a pistol shot; that she at first denied all knowledge of the shooting, and afterwards revealed the place where she, after the homicide, had hidden the pistol, and she produced it. In the absence of any explanation, the jury were justified in believing that she, still smarting from the previous quarrel, was the cause of and actively participated in the unexplained and unequal fight with Amos, the deceased, doubtless thinking, because of the dim light, that he was Hawkins, and that she was present aiding and abetting the homicide, if not herself directly responsible for the unnecessary use of the pistol.

[10] The assignments of error, which were identical with those assigned in the *Earl Martin Case*, have been sufficiently discussed.

The court refused to instruct the jury that there was a presumption of law that she acted under the coercion of her husband, and that the burden to overcome that presumption by affirmative evidence would be upon the Commonwealth, and this is assigned as error.

This presumption never applied to the crime of murder, and hence the court committed no error in refusing it. 13 R. C. L., sec. 278, p. 1241. A similar question was raised in the case of *Brown* v. *Commonwealth*, 135 Va. 480, 115 S. E. 542, which was a misdemeanor case, and it is unnecessary to repeat the views there expressed.

For the reasons which we have indicated, both judgments will be affirmed.

*Affirmed.*