STATE OF NORTH CAROLINA v. EDWIN J. LASSITER AND
JAMES HENRY BURGESS

No. 711SC637

(Filed 29 December 1971)

1. Hunting § 3— hunting deer by artificial light — prosecution — sufficiency of warrants

    Warrants charging that defendants unlawfully and wilfully attempted to take deer with the aid of an artificial light between the hours of sunset and sunrise on a highway and in a field, woodland and forest, *held* sufficient to charge the offense defined by G.S. 113-104 and punishable under G.S. 113-109(b).

State v. Lassiter

2. **Hunting § 3— hunting deer by artificial light — constitutionality of criminal statutes**

The statutes prohibiting the unlawful taking of deer with the aid of an artificial light between the hours of sunset and sunrise are constitutional. G.S. 113-104; G.S. 113-109(b).

3. **Hunting § 3; Evidence § 4— hunting deer by artificial light — validity of statutory presumptions**

The statutory presumption that the possession of an artificial light and firearms after sunset in an area frequented or inhabited by wild deer shall constitute *prima facie* evidence of the violation of the statute making it unlawful to take game animals in the nighttime with the aid of an artificial light, is held valid, there being a rational connection between the acts raising the *prima facie* evidence rule and the main fact to be proved. G.S. 113-109(b).

4. **Evidence § 4; Constitutional Law § 6— powers of the legislature — creation of prima facie rules of evidence**

It is within the power of the General Assembly to change the rules of evidence and, within constitutional limits, to provide that the proof of one fact shall be deemed *prima facie* evidence of a second fact.

5. **Hunting § 3— hunting deer by artificial light — sufficiency of evidence**

In a prosecution charging defendants with the unlawful hunting of deer by artificial light, the issue of the defendants' guilt was properly submitted to the jury, where there was evidence that (1) the defendants, between sunset and sunrise, were shining a light over 50 feet from a highway into a field, woodland and forest, and (2) the defendants were in possession of firearms and in an area frequented by deer.

APPEAL by defendants from *Peel, Judge,* 22 March 1971 Session of Superior Court held in GATES County.

These cases have been before this Court previously upon an appeal by the State from a judgment of the Superior Court which quashed the two warrants. Therefore, for background facts see 9 N.C. App. 255, where this Court reversed the judgment of the Superior Court of Gates County.

Upon the motions of the defendants, the actions were remanded to the Gates County District Court.

At the 2 November 1970 Session of the Gates County District Court, Horner, Judge Presiding, the State moved to amend the warrants. These motions were allowed.

The amended warrants against defendants charged that on or about 29 November 1969 they "did unlawfully and wilfully

attempt to take deer with the aid of an artificial light between the hours of sunset and sunrise on a highway and in a field, woodland and forest, contrary to the form of the statute 113-104. . . ."

Defendants were convicted in District Court and appealed to Superior Court. Before pleading to the warrants in Superior Court, defendants moved to quash the warrants as amended, which motions were overruled. After entering pleas of not guilty, the defendants were tried before a jury.

The State offered evidence which, in brief summary, tends to show: At approximately 1:50 a.m., 29 November 1969, two North Carolina Wildlife Protectors, Mr. Elks and Mr. Willis, observed the defendants' car stopped on Rural Road No. 1202 beside a corn field. Someone in the car raked the field and woods in a very slow manner with a strong light that threw a beam approximately 200 feet. The car backed up very slowly with the light flashing across the field on the left-hand side of the car. A short time later the light began spotting the field on the right-hand side of the car in the same manner. The officers observed that James Burgess was the driver and Edwin Lassiter was a passenger. A loaded pump shotgun and a 22 caliber lever action rifle were found in the car along with a spotlight which was plugged into the car's cigarette lighter. Protector Elks testified that he had observed deer in these fields approximately a half dozen times on other occasions, and as recently as the week before.

The State's evidence further tended to show that defendants admitted that they were trying to kill a deer.

The defendants offered no evidence.

The jury returned a verdict of guilty as charged; whereupon the defendants were sentenced to six months in the common jail of Gates County, sentences suspended upon a payment by each defendant of a fine of $250.00. From this judgment the defendants appealed.

*Attorney General Morgan, by Associate Attorney Kane, for the State.*

*Jones, Jones & Jones, by L. Herbin, Jr., for defendants.*

BROCK, Judge.

**[1]** The defendants-appellants argue that the trial court committed error in failing to quash the amended warrants against the defendants upon their motions.

We hold that the amended warrants were sufficient to survive motions to quash. The warrants clearly charged a criminal offense created by and defined by G.S. 113-104.

G.S. 113-104 provides in pertinent part that ". . . [g]ame birds and game animals shall be taken only in the daytime, between sunrise and sunset, . . ." and that ". . . [n]o person shall take any game animals . . . by aid of or with the use of any jacklight, or other artificial light . . ."

By G.S. 113-83, deer is defined as a "game animal." G.S. 113-83 also defines "take" to mean the pursuit, hunting, capture or killing of birds or animals. Thus, one violates G.S. 113-104 when he pursues or attempts to kill a deer by aid of or with the use of any artificial light, because this activity falls within the statutory definitions of "taking" and "game animal."

A conviction of the offense of taking, or attempting to take deer other than in the daytime, and with the use of an artificial light, as prohibited by G.S. 113-104 is punishable under the provisions of G.S. 113-109. At the time alleged in the warrant, G.S. 113-109(b) provided: "Any person who takes or attempts to take deer between sunset and sunrise with the aid of a spotlight or other artificial light on any highway or in any field, woodland, or forest, in violation of this article shall, upon conviction, be fined not less than two hundred fifty dollars ($250.00) or imprisoned for not less than ninety days."

This provision of G.S. 113-109(b) does not create a distinct or separate criminal offense from that created and defined by G.S. 113-104. Rather, G.S. 113-109(b) merely provides a greater punishment when the stated conditions are shown and proved by the State. This is similar to the relationship of the offense of common-law robbery to that of robbery with firearms or other dangerous weapons (G.S. 14-87). The primary purpose and intent of the legislature in enacting G.S. 14-87 was to provide for more severe punishment for the commission of robbery when such offense is committed or attempted with the use or threat-

ened use of firearms or other dangerous weapons. See *State v. Bailey,* 278 N.C. 80, 178 S.E. 2d 809 (1971).

We hold that the warrants allege facts which constitute a criminal offense under G.S. 113-104 which is punishable under G.S. 113-109 (b).

[2] The defendants further contend that the pertinent portions of North Carolina General Statutes, Chapter 113, Section 104 and 109 (b) under which defendants are charged are unconstitutional on their face and as applied. Defendants also contend these statutes are unconstitutionally vague, uncertain and ambiguous. G.S. 113-104 and the first sentence of G.S. 113-109 (b) are clear and definite as to the persons within the scope of the statutes and the acts which are penalized. G.S. 113-104 and the first sentence of G.S. 113-109 (b) have the purpose of controlling and managing the use and methods of taking wildlife—a part of our natural resources, which are of vital interest to this State's citizens. These laws, protecting and managing wildlife, are within the legitimate interests of the State and in the public interest. They are constitutional and this part of defendants' argument is feckless. See *State v. Hales,* 256 N.C. 27, 122 S.E. 2d 768 (1961).

[3] The defendants also contend that the prima facie evidence rule of G.S. 113-109 (b) is unconstitutional due to vagueness and because it deprives them of their right to the presumption of innocence until proven guilty by due process of law. We do not agree. We hold the prima facie evidence rule of G.S. 113-109 (b) is constitutional. See *State v. Hales, supra.*

The prima facie evidence rule of G.S. 113-109 (b) is as follows:

" . . . In any locality or area which is frequented or inhabited by wild deer, the flashing or display of any artificial light from roadway or public or private driveway so that the beam thereof is visible for a distance of as much as fifty feet from such roadway or driveway, or the flashing or display of such artificial light at any place off such roadway or driveway, when either of such acts is accompanied by the possession of a firearm or a bow and arrow during the hours between sunset and sunrise, shall constitute prima facie evidence of a violation punishable under the provisions of the preceding sentence."

**[4]**  It is well settled in this State that it is within the power of the General Assembly to change the rules of evidence and, within constitutional limits, to provide that the proof of one fact shall be deemed prima facie evidence of a second fact. *Milk Commission v. Food Stores*, 270 N.C. 323, 154 S.E. 2d 548 (1967).

In *Milk Commission, supra,* Justice Lake said, " . . . it is now also well established in this State, and in other jurisdictions, that the exercise of such power by the Legislature is subject to the limitation that there must be such relation between the two facts in human experience that proof of the first may reasonably be deemed some evidence of the existence of the second." Therefore, the test to be applied to the prima facie evidence rule of G.S. 113-109(b) in order for it to be constitutional is that there be a rational connection between the fact proved and the ultimate fact presumed so that the inference of the one from proof of the other is not unreasonable and arbitrary. See Annot. 162 A.L.R. 495; Annot. 13 L.ed. 2d 1138.

**[3]**  We hold that the prima facie evidence rule of G.S. 113-109(b) meets the requirements of the "rational connection rule." There is a fair relation between the acts which raise the prima facie evidence rule and the main fact to be proved. The main fact being that the defendants were attempting to take wild deer between sunset and sunrise with the aid of artificial light. The presumption of G.S. 113-109(b) has a rational, real, and substantial relation to the end sought to be accomplished, which is the protection of deer from the unfair hunting or wholesale slaughter by man.

Legislation creating statutory presumption of the type here before us have been almost uniformly upheld by the highest state and Federal courts on numerous occasions. See Annot. 81 A.L.R. 2d 1093; 162 A.L.R. 495; 35 Am. Jur. 2d, Fish and Game, § 53.

We think G.S. 113-109(b) does not deprive the defendants of their right to the presumption of innocence until proven guilty or due process of law. There is no ground for holding that due process of law has been denied defendants if a legislative provision, not unreasonable in itself, prescribing a rule of evidence in criminal cases does not shut out from the parties affected a reasonable opportunity to submit to the jury in their

defense all the facts bearing upon the issue. The presumption before us is not conclusive upon the jury; they may still under the law return a verdict in favor of the defendants. *State v. Person,* 56 Wash. 2d 283, 352 P.2d 189, 81 A.L.R. 2d 1088; *Williams v. State,* 239 So. 2d 583 (Fla.); 29 Am. Jur. 2d, Evidence, § 9.

Thus, when the State produced evidence that defendants had an artificial light and firearms in their possession after sunset in an area which was frequented or inhabited by wild deer, the State had then shown, prima facie, a violation of the statute. The statute did not shift the burden of proof from the State to the defendants, or deprive them of the presumption of the innocence which remained with them until overcome by evidence of guilt beyond a reasonable doubt. *State v. Person, supra.*

**[5]** Besides the question of constitutionality of the statutes involved, the defendants contend the trial court committed error in failing to allow the defendants' motions for nonsuit. We think the trial court was correct. Under the G.S. 113-109(b) prima facie evidence rule, which permits the matter to go to the jury, the court properly denied the motions for nonsuit. Further, even without the benefit of the prima facie evidence rule of G.S. 113-109(b), the record clearly discloses sufficient evidence to support a verdict by the jury that the defendants had violated the law. This was a result of the State's evidence given by Wildlife Protector Elks, who testified, among other things, that: (1) the defendants were shining a light over 50 feet from a highway into a field, woodland and forest, (2) between sunset and sunrise, (3) they both were in possession of a firearm, (4) in an area frequented by deer. This, in conjunction with the defendants' confessions, was sufficient grounds to deny a motion for nonsuit. Defendants' assignments of error relating to the question of nonsuit are without merit.

The defendants' further assignments of error relate to the judge's charge to the jury. We have examined each of these carefully and find they are without merit.

No error.

Judges BRITT and VAUGHN concur.