## Richmond

### JAMES BUTNER HODGE v. COMMONWEALTH OF VIRGINIA.

October 8, 1976.

Record No. 751187.

Present, All the Justices.

*Robert P. Geary,* for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Carrico, J., delivered the opinion of the court.

In this homicide case, we consider the impact upon Virginia law of the recent decision of the United States Supreme Court in *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975). There, the Court declared violative of due process a provision of Maine law which had been embodied in the charge to the jury in the murder trial of the accused, Wilbur. The Maine law in question provided that, upon proof by the prosecution of an unlawful and intentional homicide, malice aforethought sufficient to support a conviction of murder and imprisonment for life was *conclusively* implied; to reduce the offense to manslaughter, the accused had the burden of proving by a *fair preponderance of the evidence* that he acted in the heat of passion upon sudden provocation.

The Maine law was unconstitutional, the Supreme Court stated, because it "affirmatively shifted the burden of proof to the defendant" upon "the critical fact in dispute" — the presence or absence of malice — thus increasing "the likelihood of an erroneous murder conviction." 421 U.S. at 701. With this burden of proof upon him, the Court opined, an accused "can be given a life sentence when the evidence indicates that it is *as likely as not* that he deserves a significantly lesser sentence." 421 U.S. at 703. Such a result was "intolerable," the Court concluded, and dictated the holding that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 703, 704.

In the present case, the defendant, James Butner Hodge, was convicted by jury of second degree murder in the shooting death of Janet Terry Venable, and he was sentenced in accordance with the verdict to a term of ten years in the penitentiary. The record shows that, at the time of the killing, the defendant and Venable had been living together "off and on" for approximately three and one-half years. On March 26, 1975, the couple spent the evening drinking in various bars and at a friend's home. During the evening, an argument erupted between the defendant and Venable, and the argument continued after they returned to their apartment. Approximately 3:30 a.m. on the 27th, Venable was shot and killed by a blast from the defendant's shotgun, fired at a range of three to ten feet, the charge striking her in the face. Evidence at trial revealed prior threats by the defendant against Venable.

Testifying in his own behalf, the defendant claimed that, during the course of the argument, Venable threw a clock at him and then obtained the shotgun from a corner of their bedroom. He said Venable pointed the gun at him while he was lying in bed, and that when he "kicked up the cover and grabbed the shotgun," the weapon discharged, inflicting the fatal wound. He was unable to explain how the gun got "turned all the way around to shoot [Venable] in the left cheek."

The trial court instructed the jury that it could find the defendant guilty of murder of the first or second degree or voluntary or involuntary manslaughter, or that it could return a verdict of not guilty. Each of the degrees of homicide was correctly defined, and the instructions made clear that the presence or absence of malice was the factor differentiating murder from manslaughter. Also made clear was the proposition that if the killing resulted from heat of passion upon sudden provocation, the jury could not convict the defendant of an offense greater than manslaughter.

The defendant contends, however, that an instruction of the trial court, No. 17, *infra*, embodying the law of Virginia, had the effect of shifting from the Commonwealth the burden of proof on the issue of malice and imposing upon him the affirmative burden of proving that he acted in the heat of passion upon sudden provocation. Virginia law, the defendant says, presumes

that every unlawful homicide is murder of the second degree because malice is presumed from the fact of the killing. The substantive burden of reducing the grade of the offense, the defendant asserts, then is cast upon the accused, and he must disprove malice or suffer conviction of murder. This, the defendant concludes, "does not meet due process of law standards" for the same reasons the Supreme Court struck down the Maine law and jury charge in *Mullaney.*

We agree with the defendant that, in Virginia, every unlawful homicide is presumed to be murder of the second degree. We also agree that once the Commonwealth proves an unlawful homicide and establishes the accused as the criminal agent, the presumption of second degree murder arises and he has the burden of showing circumstances of justification, excuse, or alleviation. And we acknowledge that Virginia juries usually are instructed upon the presumption of murder of the second degree arising from an unlawful killing. But we do not agree that Virginia's law and jury instructions suffer the infirmities of the Maine law and jury charge condemned in *Mullaney.*

Unquestionably, *Mullaney* and its forebear, *In re Winship,* 397 U.S. 358 (1970), stand for the proposition that the Due Process Clause requires the prosecution to "prove beyond a reasonable doubt every fact necessary to constitute the crime charged." 421 U.S. at 685. *Mullaney* holds further that in a homicide case the absence of heat of passion is a critical fact required to be so proved by the prosecution when the issue is properly presented. 421 U.S. at 704. It is clear also that any rule of state law which has the ultimate effect of shifting the burden of persuasion to the accused upon this critical issue is constitutionally infirm. 421 U.S. at 701.

But neither the Due Process Clause nor *Mullaney* prohibits the use of presumptions or inferences as procedural devices to shift to the accused the burden of producing some evidence contesting the otherwise presumed or inferred fact. These devices, however, must satisfy certain due process requirements, and the ultimate burden of proof beyond a reasonable doubt must remain upon the prosecution. *Mullaney,* 421 U.S. at 702-03, n. 31. In this context, due process requirements are satisfied if the evidence necessary to invoke the presumption or inference is sufficient for a rational juror to find the presumed or inferred fact beyond a reasonable doubt.

*Mullaney, id.; see Barnes* v. *United States,* 412 U.S. 837, 843, 846 (1973). And, with specific reference to the prosecution's burden concerning the issue of malice in a homicide case, the Court in *Mullaney* recognized that it is permissible to require the accused to produce " 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt." *Mullaney,* 421 U.S. at 701-02, n. 28.

We believe that the presumption of second degree murder employed in Virginia is the type procedural device permitted by *Mullaney.* In our opinion, neither the presumption nor the resulting burden imposed upon the accused has the effect of shifting from the prosecution the ultimate burden of persuasion upon the critical issue of malice or its corollary, the absence of heat of passion.

■ In Virginia, the presumption of innocence to which an accused is entitled follows him throughout the trial. This presumption is sufficient to require his acquittal on the charge brought against him unless the Commonwealth proves beyond a reasonable doubt every material element of that charge. The burden of proof is always upon the Commonwealth, and *this burden never shifts.* The burden of going forward with the evidence may, from time to time during the course of trial, shift from one side to the other as the exigencies of the situation may require. For example, the burden of production may first shift to the accused to neutralize, by evidence raising a reasonable doubt, a *prima facie* showing by the Commonwealth of guilt and then to the Commonwealth to overcome the showing made by the accused. But the ultimate burden of persuasion remains upon the Commonwealth, and if, upon the evidence as a whole, both for the Commonwealth and the accused, there remains a reasonable doubt of the guilt of the accused, he must be acquitted or convicted only of a lesser included charge established by the evidence. And Virginia juries universally are instructed, in homicide cases as well as other criminal matters, upon the important principles of law which protect an accused from the likelihood of an erroneous conviction.

■ The Virginia presumption that an unlawful homicide is murder of the second degree differs substantially, both in nature and effect, from the Maine presumption struck down in *Mullaney.* Unlike the Maine presumption, the Virginia

presumption *is not* conclusive. Unlike the Maine presumption, the Virginia presumption *does not* cast upon the accused the burden of proving by a fair preponderance of the evidence that he acted in the heat of passion in order to put that critical fact in issue and to require the Commonwealth to negate passion beyond a reasonable doubt. The Virginia burden is satisfied when the accused produces some credible evidence that he acted in the heat of passion. But even if he produces no evidence, he may rely upon the Commonwealth's evidence to secure a manslaughter instruction and an acquittal on the charge of murder, if that evidence indicates he acted in the heat of passion. In practical effect, therefore, the Virginia presumption amounts to no more than an inference which the trier of fact is permitted, but is not required, to draw from proven facts. Reference to several of our prior decisions will demonstrate the Virginia rules.

In *Johnson* v. *Commonwealth,* 188 Va. 848, 855, 51 S.E.2d 152, 155 (1949), we discussed presumptions in general and, in particular, the presumption that every unlawful homicide is murder of the second degree. We said:

"All these presumptions arise from facts proved. They are, of course, rebuttable, and serve merely to put the burden on the defendant to introduce evidence to explain or excuse. When he does so, then it is for the jury to say whether upon his evidence and all the other evidence there is a reasonable doubt as to the defendant's guilt."

In *Martin* v. *Commonwealth,* 143 Va. 479, 485, 129 S.E. 348, 350 (1925), we considered the presumptions arising upon proof of an unlawful homicide and of a killing with a deadly weapon in the previous possession of the slayer. We said:

"No presumption, however, relieves the prosecution of the ultimate burden of showing, upon the whole evidence, the guilt of the accused beyond a reasonable doubt."

In *Hannah* v. *Commonwealth,* 153 Va. 863, 871, 149 S.E. 419, 422 (1929), we reversed a second degree murder conviction because an instruction failed to differentiate a malicious killing from a killing resulting from heat of passion. In the course of our opinion, we said:

"Although malice is presumed when the homicide is unaccompanied by circumstances of palliation, yet when the provocation appears to be gross, and when the act is impelled by it and done in passion, this presumption, as a matter of law, does not obtain. If its existence be a legal possibility in such circumstances, certainly the burden is upon the Commonwealth to show it."

In *Reid* v. *Commonwealth*, 206 Va. 464, 469, 144 S.E.2d 310, 313-14 (1965), we considered the objection of the accused that he was improperly refused an instruction on involuntary manslaughter. We held:

"We find that this objection was well taken. Under the evidence of the Commonwealth, particularly the confession of the defendant, the jury could have found that in the prosecution of an unlawful but not felonious act the defendant accidentally set fire to the decedent's clothing. If the jury so found, they might have convicted him of involuntary manslaughter."

And, in *Taylor* v. *Commonwealth*, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947), we commented upon the quantum of evidence necessary to warrant the granting of instructions on the lesser degrees of homicide. We there said:

"It is reversible error for the trial court to refuse to instruct the jury on the lesser offenses charged in the indictment if there is any evidence in the record tending to prove such lesser offenses."

We further believe that the Virginia presumption or inference of malice arising from the commission of an unlawful homicide is clothed with the due process safeguards required by *Mullaney* and *Barnes, supra.* Our law comports with the *Barnes* rule that the evidence necessary to invoke the presumption or inference must be sufficient for a rational juror to find the presumed or inferred fact beyond a reasonable doubt. *Burnette* v. *Commonwealth*, 194 Va. 785, 792-93, 75 S.E.2d 482, 487 (1953); *Johnson* v. *Commonwealth, supra; Martin* v. *Commonwealth, supra.* This is the standard required of triers of fact in deciding homicide cases, and it is the standard we apply in reviewing their findings. As we said in *Jacobs* v. *Commonwealth*, 132 Va.

681, 686, 111 S.E. 90, 92 (1922), "We have held in perfectly clear cases that the evidence was not sufficient to show malice, even where the jury had found to the contrary . . . ."

We find in Virginia law, therefore, no violation of the *Mullaney* rule that the burden of persuasion may not be shifted to the accused upon the critical issue of malice. Virginia has long recognized that malice and heat of passion cannot coexist. Proof of malice excludes the presence of passion, and proof of passion presupposes the absence of malice. *Brown* v. *Commonwealth*, 86 Va. 466, 473-74, 10 S.E. 745, 747-48 (1890).

Thus, when the Commonwealth makes a *prima facie* showing that malice exists, it thereby establishes *prima facie* that heat of passion is absent. In a given situation, the accused, without producing evidence, may be entitled to an instruction on manslaughter, or even to a verdict on that lesser charge, if it can reasonably be inferred from the Commonwealth's evidence that he acted in the heat of passion. *Reid* v. *Commonwealth, supra.* Where the Commonwealth's evidence does not permit such an inference, however, the burden of production shifts to the accused. But when he produces some credible evidence that he acted in the heat of passion, he is entitled to an instruction on manslaughter and also, if the evidence as a whole raises a reasonable doubt that he acted maliciously, to a verdict on the lesser charge of homicide. *See McClung* v. *Commonwealth*, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).

This brings us to consideration of the instruction challenged by the defendant in the present case. That instruction, No. 17, reads as follows:

"The Court instructs the jury that every unlawful homicide is presumed to be murder in the second degree. In order to elevate an unlawful homicide to murder in the first degree, the burden of proving the element thereof is upon the Commonwealth. In order to reduce an unlawful homicide from murder in the second degree to manslaughter or excusable homicide, the burden is upon the defendant. It is your duty to consider all of the testimony, no matter by whom introduced, and ascertain therefrom if the defendant is guilty or innocent, and if guilty, of what offense."

From a reading of Instruction No. 17, it will be observed, at once, that while it speaks of a presumption that every unlawful

homicide is murder of the second degree, it *does not* state, as did the jury charge in *Mullaney*, that the presumption is conclusive. And, while the instruction says that the burden is upon the defendant to reduce the offense from murder to manslaughter, the burden *is not* expressed, as was the burden in the *Mullaney* jury charge, in terms of proof by a fair preponderance of the evidence. Furthermore, the last sentence of the instruction, requiring the jury to consider "all of the testimony, no matter by whom introduced," in determining guilt, innocence, or degree of guilt, clearly indicated to the jury that no burden of persuasion was imposed upon the defendant.

Indeed, in another instruction, the jury was told that "the presumption referred to in Instruction No. 17 is not a conclusive presumption but may be overcome by proof of extenuating circumstances sufficient to create a reasonable doubt in favor of the defendant, either as to the degree of the offense or as to his guilt or innocence." And, in yet another instruction, the jury was told that if it believed from the evidence, meaning all the evidence without reference to any burden upon the defendant, "that the killing was not from malice, but was done in the heat of passion, upon reasonable provocation," it should not find the defendant guilty "of any higher offense than voluntary manslaughter."

In another instruction, the jury was told that the burden was upon the Commonwealth "to prove by the evidence beyond a reasonable doubt every material and necessary element of the offense charged against the defendant;" in another, that the burden was upon the Commonwealth to prove the guilt of the defendant beyond a reasonable doubt and that this burden "never shifts, that is, after all the evidence is heard, the jury may not convict the defendant unless the Commonwealth has met its burden of proof, by convincing [the jury] to a moral certainty and beyond all reasonable doubt that the defendant is guilty;" and in another, that the defendant's presumption of innocence "goes with [him] throughout the entire case, and applies at every stage thereof, and if, after having heard all of the evidence in this case the jury have a reasonable doubt of the guilt of the accused upon the whole case, or as to any fact essential to prove the charge made against [the defendant] in the indictment, it is [the jury's] duty to give the defendant the benefit of the doubt and find him not guilty."

Finally, we note specially that the defendant's real defense in this case was that the killing of the victim, Venable, was accidental. Upon this crucial point, the jury was instructed as follows:

> "The Court instructs the jury that where, as in the case at bar, the defense is that the killing was an accident, the defendant is not required to prove this fact, beyond a reasonable doubt, or by a preponderance of the evidence, but the burden is upon the Commonwealth to prove beyond a reasonable doubt that said killing was not accidental; therefore, if, after hearing all the evidence, you have a reasonable doubt whether said killing was accidental, or that it was intentional, then you should find the defendant not guilty."

From a reading of the instructions as a whole, it is inconceivable that the jury could have misunderstood where the ultimate burden of proof rested. The instructions squarely placed upon the Commonwealth the burden of establishing beyond reasonable doubt every material element, including malice, of the offense with which the defendant was charged. It is equally inconceivable that the jury could have been misled to believe that any burden of persuasion rested upon the defendant with respect to any critical issue concerning the offense.

The evidence before the jury fully justified its conclusion that the killing was malicious and therefore constituted murder of the second degree, rather than manslaughter, thus warranting the sentence for the higher offense. Virginia law protects an accused from the theoretical hazard posed in *Mullaney* — that he might be convicted of a higher offense and given a greater sentence when it is "as likely as not" that he is guilty of a lower offense and deserves a significantly lesser sentence — and the defendant did not suffer that hazard in this case. Accordingly, we reject the defendant's claim that Virginia law and Instruction No. 17, granted below, contravene the holding in *Mullaney*, and we affirm the judgment of the trial court.

*Affirmed.*