## Richmond

### CLIFFORD M. WILSON, ET AL.

### V.

### COMMONWEALTH OF VIRGINIA

March 11, 1983.

Record No. 812049.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

---

* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*Robert T. Wandrei (Radford & Wandrei,* on brief), for appellants.
*Robert Harris, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Clifford M. Wilson and Russell Wayne Burks were tried jointly by a jury and found guilty of attempting to kill deer at night by use of headlights in violation of Code § 29-144.2; punishment was fixed at payment by each of a fine of $500. The trial court entered judgment on the verdict. On appeal, as at trial, Wilson and Burks challenge the constitutionality of the statute and the admissibility of certain evidence.

Code § 29-144.2 provides in pertinent part:

> **§ 29-144.2 Killing deer or elk by use of certain lights; acts raising presumption of attempt to kill.** — Any person who kills or attempts to kill any deer or elk between a half hour after sunset on any day and a half hour before sunrise the following day by use of a light attached to any vehicle or a spotlight or flashlight shall be guilty of a misdemeanor and shall be punished by a fine of not less than one hundred fifty

dollars nor more than five hundred dollars or by confinement in jail for not less than thirty days nor more than ninety days, either or both. The flashing of a light attached to any vehicle or a spotlight or flashlight from any vehicle between a half hour after sunset on any day and a half hour before sunrise the following day by any person or persons, then in possession of a rifle, shotgun, pistol, crossbow, or bow and arrow or speargun, without good cause, shall raise a presumption of an attempt to kill deer or elk in violation of this section. Every person in or on any such vehicle shall be deemed a principal in the second degree and subject to the same punishment as a principal in the first degree. Every person who, in any manner, aids, abets or acts in concert with any person or persons in committing an act in violation of this section shall be deemed a principal in the second degree and subject to the same punishment as a principal in the first degree.

The evidence was stipulated. State Game Warden E. M. Ashworth testified that on March 31, 1981, at 8:20 p.m., he was traveling south on State Route 122 when he saw several deer in an open area on the side of the road. About one mile south of this area he passed an automobile proceeding north "at a very slow rate of speed." Turning back, Ashworth followed the vehicle until, from a distance of 1,000 feet, he observed it stop with its headlights pointed at a 45° angle into the area where the deer were standing. The lights revealed a deer running away about 20 yards from the car. Ashworth followed the vehicle as it again proceeded slowly along the road and from a distance of 350 feet he saw it make another stop at a 45° angle. In the beam of its headlights he observed a deer approximately 50 yards from the vehicle.

Ashworth stopped the car, a two-door Opel sedan. Mrs. Shelby Emerson was the driver, Wilson was in the front passenger seat, and Burks, Burks's wife, and two Emerson children occupied the rear seat. A .22 caliber rifle with one round in the chamber was lying between the front seats. Wilson became abusive when Ashworth asked him to get out of the car. Ashworth called the sheriff's department for assistance, a deputy sheriff came to the scene, and Ashworth arrested Wilson and Burks for violating Code § 29-144.2.

On cross-examination, Ashworth was asked whether his reason for following the vehicle was that five days earlier, when the car

was being operated by Wilson and Burks, he had an altercation with them. Ashworth replied that he had charged the two men on that occasion with a violation of the game laws, but he acknowledged, in answer to an additional question, that the charges against them had been dismissed. He also conceded that on the evening of March 31 he did not see anyone in actual possession of the rifle and did not see Wilson or Burks aiding or abetting in the "spotlighting"[1] of deer, but he stated that both were occupants of the automobile he stopped.

On re-direct examination, Ashworth, over the defendants' objection, related particulars of the earlier charges. The stipulation does not set forth these particulars but states that the trial court ruled the testimony admissible because defense counsel had opened up the subject by initiating the inquiry into the altercation.

After presenting the testimony of Ashworth, its only witness, the Commonwealth rested. The defendants moved to strike the Commonwealth's evidence on the ground that it failed to show that they aided or abetted but showed only that they were present in the automobile, and that the statute was unconstitutional in presuming guilt from their mere presence. The trial court overruled the motion.

Burks, testifying for the defense, said that he and Wilson had gone to Bedford with Shelby Emerson to get a truck. As the men began the trip home in their truck, Emerson followed them in the car. When one of the truck tires went flat about one and one-half miles south of the place where they were arrested, Emerson stopped and gave them a ride. At the point where they saw the deer, "one of the deer jumped across the road" and caused Emerson to veer to the side. Burks warned her to be careful because of the probability that other deer were in the vicinity. Burks said that he did not know there was a rifle in the car until he got in. He denied that he or any other occupant of the vehicle was "spotlighting" deer.

---

[1] Statutes such as Code § 29-144.2 are designed to punish the hunting of deer at night with artificial light, a practice commonly known as "spotlighting" or "jacklighting" deer. Hunters who are illegally "jacklighting" deer " 'ride along in an automobile and shine a light across the field until the eyes of a deer are spotted. The light mesmerizes the deer and they can be easily shot.' " *Yeatts* v. *Minton,* 211 Va. 402, 403 n.1, 177 S.E.2d 646, 647 n.1 (1970) (quoting *Stephens* v. *Lindsey,* 304 F. Supp. 203, 204 (S.D. Ga. 1969)).

After all the evidence had been presented, Wilson and Burks moved to strike the Commonwealth's evidence on the grounds that it did not establish a prima facie case and the statute was unconstitutional to the extent it implied that mere presence in the vehicle was sufficient to support a conviction. The trial court overruled the motion and submitted the case to the jury. After the jury found them guilty, the defendants moved the court to set aside the verdicts; this motion likewise was overruled.

There is no merit in the contention of Wilson and Burks that the trial court erred in permitting Ashworth to give particulars of the earlier charges against them which were dismissed. The record does not reveal the particulars of which they complain, but, as the trial court ruled, the defendants themselves initiated the inquiry into their earlier confrontation with Ashworth. The purpose obviously was to challenge the warden's motive in stopping the same car in which they were riding five days later. Having elected to raise the question of motivation, Wilson and Burks will not be heard to complain when the Commonwealth pursued the matter further to complete the inquiry. *See Linwood Earl Briley v. Commonwealth,* 221 Va. 532, 540, 273 S.E.2d 48, 53 (1980), *cert. denied,* 451 U.S. 1031 (1981).

We turn now to the constitutional challenge to the statute. In their motions to strike the evidence, Wilson and Burks contended that to the extent the statute presumed or implied guilt from mere presence in a vehicle it was unconstitutional.

The trial court gave an instruction which was a verbatim recitation of Code § 29-144.2. The statute first provides a presumption that any person is guilty of a violation who at night in possession of a specified type of weapon flashes a light from a vehicle without good cause. The statute then provides a second presumption that every person in or on "such vehicle" is a principal in the second degree. Thus, the second presumption incorporates the first. Only a person in or on a vehicle meeting the requirements of the first presumption is "deemed" to be a principal in the second degree under the second presumption. If the first presumption is invalid, the second necessarily falls; if the first is valid, the second may not necessarily survive.

Wilson and Burks contend that both presumptions are invalid. They say that the first presumption is mandatory but, even if construed as a permissible inference, it could cause a juror to conclude that the defendants had the burden of proving "good

cause," in violation of principles enunciated in *Sandstrom* v. *Montana,* 442 U.S. 510 (1979).

In *Sandstrom,* the Supreme Court analyzed an instruction, given over the defendant's objection, that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513. The Montana Supreme Court affirmed the conviction, holding that the instruction did not shift the burden of persuasion to the defendant, but only placed on him the burden to produce some evidence. The Supreme Court said that although the Montana court is the final authority on construing a presumption under Montana law, it is not the final authority on the interpretation which a jury could have given the instruction. *Id.* at 516-17. Noting the failure of the trial court to tell the jury that the presumption could be rebutted by the production of some evidence, or even that it was rebuttable, the Supreme Court ruled that a reasonable juror could have interpreted the presumption as conclusive or as shifting the burden of persuasion to the defendant. As either interpretation would have deprived the defendant of his due process right under the Fourteenth Amendment to have the prosecution prove every element of the crime, the Court held that the instruction was unconstitutional.

In *County Court of Ulster County, New York* v. *Allen,* 442 U.S. 140 (1979), however, the Supreme Court upheld the constitutionality of a New York statute providing that the presence of a firearm in an automobile is "presumptive evidence" of its illegal possession by all persons occupying the vehicle when the firearm is found. The Court discussed the effect of presumptions, classified them as permissive or mandatory, and stated that a litigant challenging a permissive presumption or inference must demonstrate its invalidity as applied to him. In testing mandatory presumptions, however, facial analysis is generally required. *Id.* at 159-60. Nevertheless, the Court suggested that a mandatory presumption that merely shifts to the defendant the burden of producing evidence, where the burden is satisfied by "any" evidence, may be properly analyzed as a permissive inference. *Id.* at 157-58 n.16. The Court held that the trial court's instructions made it clear that the presumption was only a part of the prosecution's case, could be ignored by the jury and thus was permissive rather than mandatory. *Id.* at 161-62. The permissive presumption, as applied, was held to meet the test stated in *Leary* v. *United States,* 395 U.S. 6, 36 (1969), that there must be a "rational connection" be-

tween the proven facts and the ultimate fact presumed and that the ultimate fact is "more likely than not to flow from" the proven facts. *Id.* at 165.

In *Mullaney* v. *Wilbur,* 421 U.S. 684, 686 (1975), the Supreme Court held unconstitutional an instruction to the jury that "if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation."

We distinguished *Mullaney* in *Hodge* v. *Commonwealth,* 217 Va. 338, 345, 228 S.E.2d 692, 697 (1976), where we analyzed an instruction that "every unlawful homicide is presumed to be murder in the second degree," and "the burden is upon the defendant" to reduce it to manslaughter or excusable homicide. We held that either the Commonwealth's own evidence or some evidence introduced by the accused tending to show manslaughter was sufficient to entitle him to a manslaughter instruction and to discharge his burden of producing evidence. We held that the presumption was no more than a permissible inference. *Id.* at 343, 228 S.E.2d at 696. We further held that from the instructions "as a whole, it is inconceivable that the jury could have misunderstood where the ultimate burden of proof rested." *Id.* at 347, 228 S.E.2d at 698.

It thus appears that our general rule is to give rebuttable presumptions permissive or burden-of-production-shifting effect only. *Johnson* v. *Commonwealth,* 188 Va. 848, 855, 51 S.E.2d 152, 155 (1949); *see Stillwell et al.* v. *Commonwealth,* 219 Va. 214, 247 S.E.2d 360 (1978); *Martin* v. *Commonwealth,* 143 Va. 479, 129 S.E. 348 (1925). We have held unconstitutional an irrebuttable presumption that may be arbitrarily applied. *Crenshaw et al.* v. *Commonwealth,* 219 Va. 38, 245 S.E.2d 243 (1978). We have also held a presumption invalid where there was no rational connection between the proved facts and the ultimate fact presumed. *Sharp* v. *Commonwealth,* 213 Va. 269, 271, 192 S.E.2d 217, 218 (1972).

Statutes in other states with presumptions similar to the first presumption in § 29-144.2 have generally been upheld. *See State* v. *Lassiter,* 13 N.C. App. 292, 185 S.E.2d 478 (1971), *cert. denied,* 280 N.C. 495, 186 S.E.2d 514, *appeal dismissed,* 280 N.C. 724, 186 S.E.2d 926 (1972); *Williams* v. *State,* 239 So. 2d 583 (Fla. 1970); *State* v. *Person,* 56 Wash.2d 283, 352 P.2d 189 (1960); Annot., 81 A.L.R.2d 1093 (1962). *But see State* v. *Rog-*

*ers,* 83 Wash.2d 553, 520 P.2d 159, *cert. denied,* 419 U.S. 1053 (1974). However, another "spotlighting" statute, applicable only in certain North Carolina counties, was held to be unconstitutionally overbroad and arbitrary because to establish a violation the State was not required to show possession of a weapon or that the defendant had any intent to kill wildlife. *State* v. *Stewart,* 40 N.C. App. 693, 253 S.E.2d 638 (1979).

In the present case, the trial court instructed the jury on the presumption of innocence, the Commonwealth's burden of proving every element of the offense beyond a reasonable doubt, and the duty of the jury to consider circumstantial evidence with "great care and caution."

We hold that the presumption of guilt is rebuttable and is to be analyzed as a permissive inference, even if it is construed to require the defendants to produce some evidence of "good cause." The defendants, therefore, under this analysis, have no standing to make a facial attack on the constitutionality of the presumption by arguing that it would be unconstitutional if applied to others in hypothetical cases. *Ulster, supra,* 442 U.S. at 154-55. Rather, they may challenge their conviction only on the basis that there was not a rational connection between the facts proved in their case and the presumption that was raised or that the latter did not flow more likely than not from the former. *Id.* at 165.

■ As applied to Wilson and Burks, the presumption that a person or persons in the car violated the statute is not unconstitutional. In addition to the facts required to raise the presumption under the statute, there was evidence that there was in the car a loaded rifle accessible to the occupants, that the car twice turned into areas frequented by deer, that the headlights of the car twice shone on deer, and that Wilson became abusive when confronted by the game warden. There was a rational connection between the proved facts and the presumed ultimate fact and the presumed fact was more likely than not to follow from the proved facts. We hold that the presumption was not unconstitutionally applied and did not offend our rule that the presumed fact of guilt must be proved beyond a reasonable doubt.

■ The unique feature of § 29-144.2 is the second presumption, characterized by the Attorney General on brief as a mandatory presumption. Wilson and Burks argue that this presumption violated due process by permitting the jury to convict them solely on the basis of their presence when the offense was committed. This

argument, however, ignores the provision that the presumption applies only upon proof that they were in "such vehicle." More than mere presence was required.

■ Furthermore, the constitutionality of presumptions involving proof of presence has been upheld. *United States* v. *Gainey,* 380 U.S. 63, 64 n.2 (1965), upheld the constitutionality of a statute which provided that presence at a still "shall be deemed sufficient evidence to authorize conviction [of 'carrying on' the illegal activity — operating a still], unless the defendant explains such presence to the satisfaction of the jury." In *Barnes* v. *United States,* 412 U.S. 837 (1973), the defendant was convicted of possessing stolen checks knowing them to be stolen. The trial court instructed the jury that it could reasonably infer guilt from the possession, if not satisfactorily explained, of stolen property. *Id.* at 839-40. The Supreme Court held the presumption or inference was constitutional.

■ We construe the second presumption as we have construed the first, to be rebuttable and not burden-of-persuasion-shifting. It is to be analyzed, therefore, as a permissible inference. The defendants were not required to prove anything, although they ran the risk of not producing some evidence to rebut the presumption. Burks did testify and, in addition to denying that he knew of the rifle before he entered the car, offered an explanation in rebuttal of the first presumption. He said that a deer in the road caused the driver of the car to veer to the side and turn the headlights at an angle. This testimony, if believed, would account for only one of the two incidents described by the game warden. Burks also denied that any person in the car was "spotlighting" deer, but the verdict showed that the jury rejected this testimony.

■ Whether the second presumption might have shifted the burden of persuasion to the defendants must be determined not only from the instruction reciting the statute, but from all the instructions given. *See Ulster, supra,* 442 U.S. at 158 n.16; *Hodge, supra,* 217 Va. at 345-47, 228 S.E.2d at 697-98.

In addition to the instruction reciting the statute, and three instructions stating the presumption of innocence, the Commonwealth's all-inclusive burden of proof, and the manner in which circumstantial evidence was to be considered, the trial court gave a fifth instruction, Instruction No. D, which read as follows:

The mere presence of a person at the scene of a commission of a crime is not sufficient to constitute him a principal in the second degree, nor is his mere consent to the commission of a crime sufficient. And unless you believe from the evidence beyond a reasonable doubt that the defendant was not only present but that he was present, aiding and abetting in the commission of the crime and that he shared in the criminal intent, then you must find the defendant not guilty.

This instruction qualified the second presumption as applied in this case. It required the jurors to find the defendants not guilty unless they believed beyond a reasonable doubt that Wilson and Burks were aiding and abetting in the commission of the crime — an attempt to kill deer by "spotlighting" — and shared in the criminal intent. The second statutory presumption is inartfully drafted and might well be subject to abuse or successful constitutional attack in other hypothetical cases. But Wilson and Burks are limited to the application of the presumption in their cases because under these instructions a reasonable juror would not have believed that the presumption was conclusive or that it shifted the burden of persuasion from the Commonwealth.

Thus, the second presumption, if employed by the jury, operated only in a permissive or burden-of-production-shifting manner. As we have demonstrated, such a presumption is not unconstitutional if, as applied in this case, there was a rational connection between the proved and presumed facts. We hold that guilt beyond a reasonable doubt could rationally be inferred from the proven facts, and we will affirm the judgments of the trial court.

*Affirmed.*

STEPHENSON, J., dissenting.

I agree with the majority's conclusion that under *County Court of Ulster County, New York* v. *Allen,* 442 U.S. 140 (1979), we must identify the type of presumption involved in the present case before passing on its constitutionality. However, my reading of *Ulster* and of *Sandstrom* v. *Montana,* 442 U.S. 510 (1979), leads me to the conclusion that the statute in question creates a

mandatory presumption violative of the due process clause of the United States Constitution.

As stated in *Sandstrom* and in *Hodge v. Commonwealth,* 217 Va. 338, 228 S.E.2d 692 (1976), one must look at the entire charge to the jury to determine the type of presumption involved. 442 U.S. at 514; 217 Va. at 347, 228 S.E.2d at 698. The test to be applied is whether a reasonable jury could have believed it was required to apply the presumption, or that the defense was required to present evidence to rebut it. *Sandstrom,* 442 U.S. at 516-17.

The majority concludes the trial court's instructions on the presumption of innocence and on the Commonwealth's burden of proving each element of the offense beyond a reasonable doubt were sufficient to overcome the mandatory presumptive language of Code § 29-144.2. However, in *Sandstrom,* the Supreme Court held that general instructions on the presumption of innocence and on the Commonwealth's burden of proof, similar to the ones given in the instant case, were not sufficient to overcome the infirmity of a jury instruction stating that, "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513, 518, n.7.

The jury charge in *Sandstrom* may be compared to that in *Ulster.* The *Ulster* court concluded that:

> The trial judge's instructions make it clear that the presumption was merely a part of the prosecution's case, that it gave rise to a permissive inference available only in certain circumstances, rather than a mandatory conclusion of possession, and that it could be ignored by the jury even if there was no affirmative proof offered by defendants in rebuttal.

*Ulster,* 442 U.S. at 160-61. It therefore held the presumption involved was a permissible inference not subject to a facial attack. *Id.* at 162-63.

I conclude the jury in the instant case could have believed it was required to follow the presumption, or that the defendants were required to produce more than "some evidence" in order to rebut it. Therefore, it is necessary to apply a facial test in analyzing the constitutionality of the presumptions contained in Code § 29-144.2. Applying this test, I find the first presumption impermissibly shifts the burden of proof to the defendant and does not

require the Commonwealth to prove every element of the offense beyond a reasonable doubt. Further, I do not find a rational connection between the basic facts outlined in the statute and the inferred fact that the occupants of the car had the specific intent to attempt to kill deer. I would therefore reverse the convictions and dismiss the indictments.

POFF, J., joins in dissent.

THOMPSON, J., concurring in dissent.

I concur in the dissent of Justice Stephenson and would like to add this.

The first sentence of the statute under consideration, Code § 29-144.2, defines the crime and prescribes the punishment. The second sentence lists certain physical facts from which the offense can be presumed. The third sentence defines activity from which the criminal agency can be presumed.

The majority opinion labels these presumptions as permissible inferences, but clearly indicates that guilt in the instant case can only result by adding one permissible inference to another.

In many cases this court has frowned upon the practice of basing an inference upon an inference, *Kayh* v. *Commonwealth,* 219 Va. 424, 247 S.E.2d 696 (1978) and *Doyle* v. *Commonwealth,* 212 Va. 677, 187 S.E.2d 201 (1972). *See also* dissenting opinion in *Southern States Coop.* v. *Doggett,* 223 Va. 650, 659-660, 292 S.E.2d 331, 337 (1982), where it is stated:

> In the present case, however, the jury verdict approved by the trial court depends entirely upon the pyramiding of inferences.

If the two criminal cases are still viable precedents, they would control in the instant case as both the offense and the criminal agency are bottomed upon permissible inferences.

In Friend, *The Law of Evidence in Virginia* § 91 at 234-35 (2d ed. 1983), Professor Friend indicates that this precedent was discarded by this court many years ago in *C & O R.R.* v. *Ware,* 122 Va. 246, 255, 95 S.E. 183, 186 (1918).

If the inference-upon-inference rule has been abandoned by this court, and I think that it has, this is an appropriate occasion to say so.