COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Felton and Kelsey
Argued at Salem, Virginia


MORTIE J. DOWDY

                                                    MEMORANDUM OPINION* BY
v.          Record No. 2509-02-3                    JUDGE D. ARTHUR KELSEY
                                                        DECEMBER 30, 2003
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                              Ray W. Grubbs, Judge

          Stephanie G. Cox (Marshall J. Frank, P.C., on briefs), for appellant.

          Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General, on brief), for appellee.


     Appellant, Mortie J. Dowdy, challenges his conviction for incest (Code § 18.2-366),

alleging that the evidence fails to establish that he was the victim's father.  Dowdy also argues

that the trial court incorrectly convicted him of rape (Code § 18.2-61), contending that the

victim's testimony was inherently incredible.  Finding the evidence sufficient to demonstrate

appellant's guilt on both charges, we affirm.

                                            I.

     On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom."  Kelly v. Commonwealth, 41 Va. App. 250,

_____

     * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting <u>Watkins v. Commonwealth</u>, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

On March 23, 2001, April Dowdy telephoned appellant, Mortie J. Dowdy, to ask for money "to get diapers and stuff." Appellant, who was getting ready to cook dinner at the time, told April to "just come on over and we'll have dinner." April accepted the invitation and went to appellant's house with her three-year-old son. After dinner, appellant "snapped." Wielding a "white-handled knife," he grabbed April's arm, pulled her into his bedroom, and threw her up against the wall.

Appellant held the knife to April and told her he "was going to hurt me or my son" if April did not remove her clothing. April complied. After ordering April "to lay down," appellant held her "arms with one hand," then performed vaginal and anal intercourse on her. Throughout this encounter, appellant ignored April's repeated appeals for him to "please stop." He also ignored the fact that April's "son was behind the door screaming for mommy."

Following the attack, appellant approached April and placed what "felt like a gun . . . to the back of my head." He ordered her to walk to the kitchen. There, appellant ordered April "to state that this never happened." To ensure her compliance, appellant had her "write it on the back of a Bell Atlantic paper, envelope thing," and both signed the envelope. Clarifying the subject of the agreement, appellant wrote "have sex" on the envelope. Once allowed to leave, April grabbed her son, ran to her car, and frantically drove to the home of Joanne Ford, April's sister-in-law.

When she arrived at Ford's house, April "was hanging on to the steering wheel just as hard as she could." "She was just screaming and just hanging on for dear life," Ford remembered, "just paranoid as could be." After several people finally pried April from the car, April went into the house where "she just kept crying and kept crying." April calmed down and informed Ford that appellant had raped her. Ford called the police and then took April to a local hospital.

At the hospital, Detective Brad Roop interviewed April. She told Roop she had been raped by appellant. Based on April's statement, the police searched appellant's house and located the white-handled knife and the envelope. Police then placed appellant under arrest for rape and abduction. Appellant admitted to the police "that he had had sex with April Dowdy." Based upon this evidence, the Commonwealth obtained indictments from the grand jury charging appellant with rape and incest.

At trial, April testified that appellant acknowledged her as his daughter even though she had been raised in foster care. April said she had always acknowledged appellant as her father. Without objection, April also testified that her biological mother (Barbara Jean Dowdy) identified appellant as April's father. Appellant's second wife, Rose L. Dowdy, likewise said April was appellant's daughter, though "at the time he didn't know [she] was his daughter." In addition, Joanne Ford testified that appellant was known as April's father. Finally, April testified that her birth certificate identified appellant as her father.

Appellant took the stand and denied paternity. He did admit, however, that April was born during his marriage to Barbara Jean Dowdy, April's biological mother. He also claimed that a "Judge Wilson, over here in Montgomery County" had "unlisted" appellant from April's birth certificate. Appellant, however, produced no other evidence corroborating his claim of being removed from the official birth certificate.[1]

---

[1] Appellant successfully objected at trial to the admission of the birth certificate as an exhibit, but did not object to April's testimony concerning it. An objection to an exhibit does not, by itself, constitute an objection to oral testimony concerning the refused exhibit. "An objection made at trial on one ground does not preserve for appeal a contention on a different ground." Clark v. Commonwealth, 30 Va. App. 406, 411, 517 S.E.2d 260, 262 (1999). In addition, by offering evidence that he had been "unlisted" from the original birth certificate, appellant further waived any objection to April's testimony. See Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970) (offering evidence of the "same character" as the allegedly objectionable evidence waives objection); Snead v. Commonwealth, 138 Va. 787,

After the presentation of the Commonwealth's evidence at trial, appellant moved to strike the incest charge, arguing that the evidence did not establish paternity. Overruling the motion, the trial court stated that April's assumption of appellant's surname provided *prima facie* evidence that, when combined with her testimony that appellant "acknowledged her as his daughter," sufficiently established the parental link. Following appellant's evidence, the trial court again overruled his motion to strike on the same grounds, adding that "the evidence shows that April Dowdy was born to the marriage of Ms. Bailey, who was then Mrs. Dowdy, and Mr. Dowdy, and having been born during the marriage, it's presumed that she is the child of Mr. Dowdy and that fact has not been rebutted by the evidence heard this morning."

The trial court also overruled appellant's motion to strike the rape charge, finding that "the credibility of the Commonwealth witnesses, particularly that of April Dowdy," presented sufficient evidence for the charge to withstand a motion to strike.

After closing arguments, the trial court found appellant guilty of both rape, in violation of Code § 18.2-61, and incest, in violation of Code § 18.2-366. The trial court sentenced appellant to 35 years and 5 years, respectively, suspending 28 years of the total sentence. He now appeals both convictions.[2]

II.

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly

---

801-02, 121 S.E. 82, 86 (1924) (recognizing waiver where the objecting party offers "on his own behalf testimony *similar to that to which the objection applies*" (emphasis added)).

[2] After filing a notice of appeal to this Court, appellant's original attorney filed an Anders motion, seeking to withdraw as counsel on the grounds that the defendant's appeal was frivolous. See Anders v. California, 386 U.S. 738, 744 (1967) ("[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw."). We granted the Anders motion and appointed new counsel.

wrong or without evidence" to support it. <u>Kelly</u>, 41 Va. App. at 257, 584 S.E.2d at 447 (citations omitted); <u>see</u> <u>also</u> <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). When a jury decides the case, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." <u>Pease v. Commonwealth</u>, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), <u>aff'd</u>, 266 Va. 397, 588 S.E.2d 149 (2003) (*per curiam*). The same standard applies when a trial judge sits as the factfinder because the "judgment of a trial court sitting without a jury" is entitled to the same weight as a jury verdict. <u>Cairns v. Commonwealth</u>, 40 Va. App. 271, 293, 579 S.E.2d 340, 351 (2003) (citation omitted).

Put another way, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). It asks instead whether "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" <u>Kelly</u>, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting <u>Jackson</u>, 443 U.S. at 319 (emphasis in original and internal quotation marks omitted)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Id.</u> It also gives full play to our appellate responsibility not to "substitute our judgment for that of the trier of fact," <u>Kelly</u>, 41 Va. App. at 257, 583 S.E.2d at 447 (citation omitted), "even were our opinion to differ," <u>Wactor v. Commonwealth</u>, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)

(citation omitted); see also Mohajer v. Commonwealth, 40 Va. App. 312, 321, 579 S.E.2d 359, 364 (2003) (*en banc*); Pease, 39 Va. App. at 355, 573 S.E.2d at 278.[3]

A.

Under Code § 18.2-366(B), felony incest occurs when an individual commits adultery or fornication with his or her child, grandchild, or parent. See Bridgeman v. Commonwealth, 3 Va. App. 523, 351 S.E.2d 598 (1986). Because appellant admitted having sex with April, our only inquiry is whether a rational factfinder could find that the evidence established paternity beyond a reasonable doubt.[4] For the following reasons, we hold that the paternity finding rests on sufficient evidence.

Without objection, April identified appellant as her father — as did her biological mother, appellant's later wife, and April's sister-in-law. Appellant admitted that April was born during his marriage to April's biological mother, and implicitly admitted that the original birth certificate listed him as the father. (His name could not be "unlisted" without first being listed.) April too testified that appellant was identified as her father on her original birth certificate. Further, appellant and April share a common surname that they have used, without interruption,

---

[3] This deference applies not only to the historical facts themselves, but to the inferences from those facts as well. "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).

[4] We are unpersuaded by appellant's reliance on Bridgeman v. Commonwealth, 3 Va. App. 523, 351 S.E.2d 598 (1986), for establishing a baseline for evidentiary sufficiency in paternity cases. In that case, a panel of this Court held that the results of an HLA blood test failed to establish paternity when, among other things, "the alleged victim testifies as a witness for the Commonwealth and *denies* the act of incest . . . ." Id. at 529-30, 351 S.E.2d at 602 (emphasis added). "In this case we need not decide," Bridgeman made clear, "whether under different circumstances the HLA test result alone may suffice to prove incest beyond a reasonable doubt." Id. at 529, 351 S.E.2d at 602. In our case, however, the victim of the crime testified without qualification against appellant and supported her testimony with corroborating evidence. Thus easily distinguished, Bridgeman does not control.

during their respective lifetimes. Viewed in the light most favorable to the Commonwealth, these subsidiary facts — coupled with the reasonable inferences that flow from them — provide sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that, as an ultimate fact, April was appellant's daughter.[5]

We also reject appellant's claim that the trial court impermissibly applied a common law presumption in favor of paternity in a manner that undermined the established burden of proof requiring the Commonwealth to prove paternity beyond a reasonable doubt. "The judge is presumed to know the law and to apply it correctly in each case." Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003); see also Shenk v. Shenk, 39 Va. App. 161, 169, 571 S.E.2d 896, 900 (2002) ("A trial court is presumed to apply the law correctly."). As a result, we "will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). And a "trial court's remark is not, in and of itself, 'the full context' simply because it represents the only point at which the court [expressly] addressed the issue [in dispute]." Bassett v. Commonwealth, 13 Va. App. 580, 583-84, 414 S.E.2d 419, 421 (1992).

Here, the trial judge stated that, "having been born during the marriage, it's presumed that [April] is the child of Mr. Dowdy and that fact has not been rebutted by evidence heard this morning." In context, however, this remark does not demonstrate that the trial judge applied a

---

[5] Appellant's denial of paternity does not affect this conclusion. "A fact finder may discount an accused's self-serving explanation as a mere effort at 'lying to conceal his guilt.'" Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003) (quoting Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001)); see also Dowden v. Commonwealth, 260 Va. 459, 469, 536 S.E.2d 437, 442 (2000); Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981); Morrison v. Commonwealth, 37 Va. App. 273, 284, 557 S.E.2d 724, 730 (2002); Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 546 (2002).

mandatory presumption of law shifting the burden of persuasion to the defense, which would have reflected a basic misunderstanding of the burden of proof in criminal cases. It just as easily can be read to mean that, as the factfinder, the trial judge drew a permissible inference of paternity from the admitted fact that April was born during appellant's marriage to April's mother. In this context, "an inference, sometimes *loosely referred to as a presumption of fact*, does not compel a specific conclusion." Martin v. Phillips, 235 Va. 523, 526 n.1, 369 S.E.2d 397, 399 n.1 (1988) (emphasis added). "An inference merely applies to the rational potency or probative value of an evidentiary fact to which the fact finder may attach whatever force or weight it deems best." Id. (citing 9 J. Wigmore, Evidence in Trials at Common Law § 2491(1), at 304 (Chad. rev. 1981)).

A presumption of fact — when used no differently than a mere inference — does not offend due process principles by impermissibly shifting the burden of proof to a criminal defendant. As the United States Supreme Court has explained:

> Inferences and *presumptions* are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime — that is, an "ultimate" or "elemental" fact — from the existence of one or more "evidentiary" or "basic" facts. The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.
>
> The most common evidentiary device is the entirely permissive inference or *presumption*, which allows — but does not require — the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. In that situation the basic fact may constitute prima facie evidence of the elemental fact. When reviewing this

type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. *Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.* For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

County Court of Ulster County v. Allen, 442 U.S. 140, 156-57 (1979) (citations omitted and emphasis added); see also Estelle v. McGuire, 502 U.S. 62, 78-79 (1991) (observing that "a permissive inference is not a violation of due process because the State still has the burden of persuading the jury that the suggested conclusion should be inferred based on the predicate facts proved"); Dobson v. Commonwealth, 260 Va. 71, 74-75, 531 S.E.2d 569, 571 (2000) (holding that "the Due Process Clause does not prohibit the use of a permissive inference as a procedural device that shifts to a defendant the burden of producing some evidence contesting a fact that may otherwise be inferred, provided that the prosecution retains the ultimate burden of proof beyond a reasonable doubt"); Wilson v. Commonwealth, 225 Va. 33, 44, 301 S.E.2d 1, 7 (1983) (holding that "a presumption is not unconstitutional if, as applied in this case, there was a rational connection between the proved and presumed facts").

In our case, the permissive inference of paternity rests on a "rational connection," Wilson, 225 Va. at 40, 301 S.E.2d at 4, between the predicate fact and the inferred fact — well within the range of common experiences of a reasonable factfinder. The trial judge's use of the term "presumption" does not alter this conclusion. In legal argot, a permissible inference is "sometimes loosely referred to as a presumption of fact," Martin, 235 Va. at 526 n.1, 369 S.E.2d at 399 n.1, and should be treated as a mandatory presumption of law only when its use clearly shows it had that effect. That cannot be shown here, particularly given the absence of any

indication by the trial judge that he rejected all of the other incriminating evidence and relied exclusively on the inference. Because appellant cannot demonstrate the invalidity of the inference of paternity "as applied to him," Wilson, 225 Va. at 40, 301 S.E.2d at 4, we reject his argument that the trial court misallocated the burden of proof.

B.

Rape requires a showing that sexual intercourse occurred and "was accomplished against the victim's will 'by force, threat or intimidation.'" Sabol v. Commonwealth, 37 Va. App. 9, 16, 553 S.E.2d 533, 536 (2001) (quoting Code § 18.2-61); Ragsdale v. Commonwealth, 38 Va. App. 421, 428, 565 S.E.2d 331, 335 (2002). Central to this question is "whether the act or acts were effected with or without the victim's consent." Wactor, 38 Va. App. at 381, 564 S.E.2d at 163 (quoting Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979)) (internal quotation marks omitted). Under Virginia law, a victim's uncorroborated testimony can provide sufficient evidence for a rape conviction. Ragsdale, 38 Va. App. at 429, 565 S.E.2d at 335.

In this case, April described how appellant overcame her will and forced her to engage in sexual intercourse. Wielding a knife, appellant "grabbed" her arm, "pulled" her to his bedroom, "threw" her up against his bed and a wall, and threatened to "hurt" her or her son if she did not submit. Then, to ensure her silence, appellant held a gun to April and coerced her to sign an agreement promising not to reveal what had occurred. Officers searching appellant's house found not only the knife that April described, but also the agreement written in appellant's handwriting that described the act as "have sex." April's observed condition immediately after the incident, along with her prompt complaint, provides additional inculpatory inferences. The totality of these facts supports appellant's conviction under Code § 18.2-61.

- 10 -

III.

Sufficient evidence supports the trial court's conclusion that appellant, by virtue of his paternal relationship with April, committed incest when he engaged in sexual intercourse with her. Credible evidence also demonstrates that appellant raped April by force, threat, or intimidation. We thus affirm both convictions.

Affirmed.